E-FILED
Wednesday, 04 February, 2026  03:31:25 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| **KAYLAN BRAATEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case: 2:26-cv-02044** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **U-HAUL CO. OF ILLINOIS, INC.,** | ) | |
| | ) | **Jury Trial Demanded** |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff, Kaylan Braaten ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against U-Haul Co. of Illinois, Inc. ("Defendant"), and in support states as follows:

### NATURE OF PLAINTIFF'S CLAIMS

1.      This lawsuit arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII") seeking redress for Defendant's sex-based discrimination, sexual harassment, and retaliation under Title VII.

2.      This lawsuit further arises under Illinois common law, seeking redress for Defendant's retaliatory discharge of Plaintiff's employment in violation of public policy.

3.      This lawsuit further arises under Illinois common law, seeking redress for Defendant's invasion of Plaintiff's privacy.

4.      This lawsuit further arises under Illinois common law, seeking redress for Defendant's intentional infliction of emotional distress.

5.      This lawsuit further arises under Illinois common law, seeking redress for Defendant's negligent infliction of emotional distress.

## JURISDICTION AND VENUE

6.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 as Title VII is a federal statute.

7.     Venue of this action properly lies in the Central District of Illinois, Urbana Division, pursuant to 28 U.S.C. §1391(b) insofar as Defendant operates and transacts business in this judicial district and the events giving rise to Plaintiff's claims occurred within this District.

8.     This Court has pendent jurisdiction and supplementary jurisdiction of Count IV–VII through 28 U.S.C. §1367.

## ADMINISTRATIVE PREREQUISITES

9.     All conditions precedent to jurisdiction have been satisfied.

10.     Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights (attached hereto as Exhibit "A").

11.     Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B").

12.     This Complaint has been filed within ninety (90) days of Plaintiff's receipt of the EEOC's Dismissal and Notice of Right to Sue.

## THE PARTIES

13.     Plaintiff, Kaylan Braaten, is a natural person, over 18-years-of-age, who at all times relevant to the allegations of this Complaint resided in Champaign County, Illinois.

14.     Defendant, U-Haul Co. of Illinois, Inc., whose address is 2010 South Philo Rd., Urbana, IL 61802-8006, is a corporation that at all times material to the allegations in this Complaint was doing business in and for Champaign County, Illinois.

2

15. Plaintiff was employed by Defendant as an "employee" within the meaning of 42 U.S.C. § 2000e(f).

16. During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by Title VII, and has been engaged in an industry affecting commerce within the meaning of Title VII, 42 U.S.C. § 2000e(b).

## BACKGROUND FACTS

17. Plaintiff worked for Defendant as a housekeeper from on or about January 30, 2025, until Plaintiff's unlawful termination on or about September 2, 2025.

18. Plaintiff met or exceeded Defendant's performance expectations throughout the entire duration of her employment.

19. Plaintiff is female and is a member of a protected class because of her sex, pursuant to Title VII and the IHRA.

20. Plaintiff has a criminal conviction on her record and is therefore a member of a protected class pursuant to the IHRA.

21. Since at least February 2025, Defendant has subjected Plaintiff to different terms and conditions of employment than others not within her protected class and has subjected Plaintiff to a hostile work environment on the basis of sex, violating Title VII and the IHRA.

22. When Plaintiff was first hired in or around January 30, 2025, Heath Mitchum Jr. was working as the General Manager.

23. In or around February 2025, after Mitchum was promoted to Area Field Manager, Mitchum began sending Plaintiff personal and inappropriate messages unrelated to work as part of an effort to initiate a sexual relationship with her, including messages suggesting that he wanted to cook for her.

3

24.     Around this same time, Plaintiff spoke to Mitchum to discuss a request for additional work hours.

25.     During that meeting, Mitchum made sexual advances toward Plaintiff and told her that he would speak to his superior, District Manager Kevin (LNU), about increasing her hours if she complied with his sexual demands.

26.     Mitchum demanded that Plaintiff engage in sexual activity with him.

27.     Plaintiff, fearing for her job and against her will, submitted to Mitchum's demands under coercive circumstances.

28.     Plaintiff did not freely consent to any sexual activity with Mitchum.

29.     At the time, fearing termination or reduced work scheduling, Plaintiff reasonably believed she had no meaningful choice but to comply with Mitchum's demands.

30.     Following this incident, Mitchum repeatedly pressured and coerced Plaintiff into engaging in sexual acts at the workplace.

31.     On multiple occasions, Mitchum entered the office during Plaintiff's shifts and pressured her to engage in sexual activity with him until she submitted.

32.     Mitchum also sent Plaintiff messages directing her to meet him in an upstairs space on Defendant's premises for the purpose of engaging in sex.

33.     Plaintiff did not welcome or desire this conduct but felt trapped because Mitchum controlled her work schedule and had authority over her continued employment.

34.     On one occasion, while Plaintiff and Mitchum were engaged in sexual activity, Mitchum recorded Plaintiff without her knowledge or consent.

35.     Plaintiff became aware of the recording only when she observed a camera flash.

36. Plaintiff immediately questioned Mitchum about what he was doing, at which point he admitted that he was recording the encounter.

37. Plaintiff instructed Mitchum to delete the recording and expressed anger and distress upon learning that she had been recorded without her consent.

38. Throughout Plaintiff's employment, Mitchum repeatedly instructed Plaintiff not to clock out when he directed her to leave the workplace with him for the purpose of engaging in sexual activity.

39. On multiple occasions, Mitchum instructed Plaintiff, while she was on the clock, to leave work with him and accompany him to her home to engage in sex.

40. Plaintiff felt forced to allow Mitchum into her house, as she feared for her job if she refused to allow him entry.

41. When Mitchum demanded sex with Plaintiff off Defendant's premises, Mitchum transported Plaintiff in his vehicle, engaged in sexual activity with her for extended periods of time—often between forty-five minutes to an hour and a half—and then returned Plaintiff to work, despite Plaintiff's scheduled lunch break being only 30 minutes.

42. Plaintiff protested the extended lunch breaks Mitchum forced her to take in order to engage in sexual activity with him, to no avail.

43. Mitchum pressured Plaintiff to engage in sexual activity with him no less than 25 to 30 times.

44. Plaintiff never initiated, desired, or consented to these encounters.

45. Mitchum initiated each incident, selected the location, directed Plaintiff to accompany him, and transported Plaintiff.

46.     Plaintiff forcibly submitted only because Mitchum abused his supervisory authority and Plaintiff reasonably feared retaliation.

47.     The sexual activity occurred in numerous locations, including but not limited to Plaintiff's residence; Mitchum's residence; Mitchum's vehicle; an upstairs apartment located above Defendant's U-Haul facility; an exterior storage unit on Defendant's premises; and a maintenance closet located on the ground floor of the U-Haul facility, where Mitchum compelled Plaintiff to perform oral sex.

48.     In or around March 2025, Plaintiff opposed Mitchum's sexual advances and informed Mitchum that she did not want to engage any sexual relationship with him and attempted to cut off contact.

49.     Mitchum responded to Plaintiff's attempts to cut off contact by sending Plaintiff a photograph of himself holding a firearm and telling her that he wanted to keep their relationship secret, which Plaintiff reasonably perceived as intimidating and threatening.

50.     Plaintiff attempted to end the forcible sexual relationship with Mitchum multiple additional times, including in or around May 2025, June 2025, July 2025, and August 2025.

51.     Each time Plaintiff attempted to end the forcible sexual relationship, she was met with continued pressure from Mitchum to resume sexual activity.

52.     Additionally, Mitchum responded to Plaintiff's repeated attempts to end the forcible sexual relationship by cutting Plaintiff's work hours.

53.     Each time Plaintiff resisted or refused his sexual advances, Mitchum further reduced her work hours, confirming Plaintiff's fear of retaliation that led her to initially forcibly submit to his sexual advances.

54. Following Plaintiff's attempts to end the sexual relationship, Mitchum purchased a vibrator and a dildo and delivered them to Plaintiff at their workplace.

55. Mitchum told Plaintiff that the purpose of these items was to prevent her from having sex with anyone else.

56. Mitchum later went to Plaintiff's residence to show her how to use the sexual devices and attempted to pressure her into engaging in sexual activity with him.

57. Plaintiff again opposed Mitchum's sexual advances by refusing his advances.

58. When Plaintiff attempted to reject the devices, Mitchum pressured her to accept them.

59. Moreover, Mitchum sent Plaintiff unwanted, graphic, and explicit videos of himself masturbating.

60. On one occasion, after Plaintiff expressed to Mitchum that she wished for the unwanted sexual relationship between them to end, Mitchum angrily grabbed Plaintiff's phone and began deleting messages and media from her phone.

61. In or around August 2025, Mitchum brought a firearm to the space located above Defendant's U-Haul facility.

62. While in the upstairs space, Mitchum discharged the firearm multiple times in Plaintiff's presence, which intimidated and frightened Plaintiff.

63. During this incident, Mitchum demonstrated how the firearm could be fired and discussed its use in Plaintiff's presence, creating an unsafe and intimidating environment.

64. Mitchum stored the firearm in Defendant's upstairs space for several days.

65. Mitchum's repeated display, discharge, and storage of a firearm on Defendant's premises, particularly in Plaintiff's presence, was intimidating and threatening, and reasonably exacerbated Plaintiff's fear of retaliation, further coercing her submission to Mitchum's demands.

66. In or around July 2025, at approximately 1:00 a.m., Mitchum contacted Plaintiff while she was off duty and told her that police had located a U-Haul truck that needed to be recovered.

67. Mitchum instructed Plaintiff to accompany him to retrieve the U-Haul truck, despite the fact that Plaintiff was off duty and not scheduled to work.

68. Plaintiff informed Mitchum that she did not have a valid driver's license because she had recently returned from incarceration and had not yet been able to afford the reinstatement fee or testing required for reinstatement.

69. Despite this knowledge, Mitchum dismissed Plaintiff's concerns, told her it would be "okay," and directed her to drive anyway, exploiting his authority and Plaintiff's fear of retaliation.

70. Mitchum picked Plaintiff up from her residence around 1:30 a.m. and compelled her against her will to drive both a personal vehicle and later a U-Haul truck for approximately 20 minutes, despite Plaintiff's explicit opposition and expressed concerns.

71. Plaintiff felt forced to submit to Mitchum's orders because she was intimidated and feared losing her job.

72. During the drive, Plaintiff was visibly anxious, sweating, and fearful, conflicted between her concern about driving under tenuous circumstances and her reasonable belief that she had no meaningful choice but to comply with Mitchum's demands to avoid retaliation.

73. Mitchum returned Plaintiff to her residence around 2:30 a.m.

8

74.    This incident occurred while Plaintiff was actively attempting to end the nonconsensual sexual relationship with Mitchum and refusing his sexual advances.

75.    The pressure and coercive control arising from Mitchum's forced sexual relationship with Plaintiff caused Plaintiff to feel as though she had no choice but to submit to Mitchum's demands to help him retrieve the U-Haul truck.

76.    That same day, Mitchum attempted to pressure Plaintiff to engage in sexual activity, which Plaintiff again refused.

77.    On or about September 2, 2025, Mitchum and the newly appointed General Manager, Jay (LNU), terminated Plaintiff unlawfully, asserting that her termination was due to a prior conviction.

78.    Plaintiff had fully disclosed her conviction record on her application to work for Defendant and again disclosed the same during her initial interview with Defendant, which was conducted by Mitchum.

79.    Despite Plaintiff's prompt disclosure of her record, and Defendant's decision to knowingly hire and continue employing her for months with full knowledge of the same, Defendant unlawfully terminated Plaintiff.

80.    The timing of Plaintiff's termination, following her repeated rejection of Mitchum's sexual demands and his reduction of her hours, demonstrates that Plaintiff was terminated in retaliation for opposing sexual harassment.

81.    Throughout her employment, Plaintiff was subjected to quid pro quo sexual harassment, coerced sexual acts, and a hostile work environment based on her sex.

9

82. Mitchum abused his supervisory authority to exploit Plaintiff sexually and, when Plaintiff refused to continue submitting to his demands, retaliated against her by reducing her hours and orchestrating her termination.

83. Plaintiff was unlawfully terminated because of her sex (female) and conviction record, on September 2, 2025.

84. Plaintiff was retaliated against and her employment was ultimately terminated for opposing unlawful discrimination and for exercising her protected rights.

85. Plaintiff was targeted for termination because of her sex and opposing illegal activity, specifically sexual harassment.

86. Plaintiff suffered adverse employment actions, specifically reduced work hours and ultimately termination.

87. The sex-based discrimination and sexual harassment were perpetrated by Plaintiff's superior, Mitchum, thereby placing Defendant on actual or constructive notice of the unlawful conduct by virtue of Mitchum's role as Defendant's agent.

88. Consequently, a basis exists for employer liability for the sex-based discrimination and sexual harassment to which Plaintiff was subjected.

89. Plaintiff can show that she engaged in statutorily protected activity—a necessary component of her retaliation claim—because Plaintiff opposed sex-based discrimination and sexual harassment, including sexual assault.

### COUNT I
**Violation of Title VII of the Civil Rights Act of 1964
(Sex-Based Discrimination)**

90. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

91. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's sex, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

92. Plaintiff met or exceeded performance expectations.

93. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

94. Defendant terminated Plaintiff's employment on the basis of Plaintiff's sex.

95. Plaintiff is a member of a protected class under Title VII, due to Plaintiff's sex, female.

96. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

97. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, and loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT II
### Violation of Title VII of The Civil Rights Act of 1964
### (Sexual Harassment)

98. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

99. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and subjected Plaintiff to sexual harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

100. By virtue of the harassment being perpetrated by Mitchum, Plaintiff's superior and Defendant's agent, Defendant knew or should have known of the harassment.

101. The sexual harassment was severe or pervasive.

11

102. The sexual harassment was offensive subjectively and objectively.

103. The sexual harassment was unwelcomed.

104. Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, due to Plaintiff's sex, female.

105. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

106. As a direct and proximate result of the sexual harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, and loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT III**
**Violation of Title VII of The Civil Rights Act of 1964**
**(Retaliation)**

107. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

108. Plaintiff is a member of a protected class under 42 U.S.C. § 2000e *et seq.*

109. During Plaintiff's employment with Defendant, Plaintiff opposed conduct that constituted sex-based discrimination and sexual harassment, specifically sexual assault.

110. By nature of the sex-based discrimination and sexual harassment being perpetrated by Plaintiff's superior, Mitchum, Defendant was effectively on notice of the unlawful conduct by virtue of Mitchum's role as Defendant's agent.

111. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

112.    In response to Plaintiff's opposition to sex-based discrimination and sexual harassment, Defendant reduced Plaintiff's work hours and ultimately terminated Plaintiff's employment.

113.    Plaintiff suffered adverse employment actions, specifically reduced work hours and ultimately termination, in retaliation for engaging in protected activity.

114.    By virtue of the foregoing, Defendant retaliated against Plaintiff in response to Plaintiff opposing sex-based discrimination and sexual harassment, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*.

115.    Defendant's retaliatory conduct toward Plaintiff illustrated a willful and/or reckless violation of Title VII.

116.    As a direct and proximate result of the above-alleged willful and/or reckless acts of Defendant, Plaintiff has suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

## COUNT IV
### Retaliatory Discharge in Violation of Public Policy

117.    Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

118.    Illinois common law recognizes a cause of action for retaliatory discharge when an employee is terminated in violation of a clearly mandated public policy.

119.    775 ILCS 5/2-103.1 limits an employer's ability to take adverse employment action based on a criminal conviction absent a substantial relationship to the job or an unreasonable risk to safety or property.

120.    Plaintiff disclosed her criminal conviction to Defendant during the hiring process.

13

121.    Defendant knowingly hired Plaintiff with full awareness of her conviction and continued to employ her for several months thereafter.

122.    On or about September 2, 2025, Defendant terminated Plaintiff's employment and expressly cited Plaintiff's criminal conviction as the reason for termination.

123.    Defendant's termination of Plaintiff under these circumstances contravened Illinois public policy by punishing Plaintiff for a conviction that Defendant had knowingly accepted at the time of hire and by undermining the State's interest in fair employment opportunities for rehabilitated individuals.

124.    Plaintiff's termination was causally connected to Defendant's violation of Illinois public policy and was not supported by any legitimate business necessity or safety concern.

125.    As a direct and proximate result of Defendant's retaliatory discharge in violation of Illinois public policy, Plaintiff has suffered loss of employment, loss of income, loss of employment benefits, and has suffered and continues to suffer emotional distress, humiliation, and loss of enjoyment of life.

**COUNT V**
**Invasion of Privacy**
**(Intrusion Upon Seclusion)**

126.    Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

127.    18 U.S.C. § 1801 is a federal statute establishing privacy protections and criminalizing knowingly recording an individual's private areas without consent under circumstances in which the individual has a reasonable expectation of privacy.

128.    Likewise, 720 ILCS 5/26-4 is an Illinois statute establishing privacy protections and criminalizing the unauthorized video recording or live transmission of individuals without their knowledge or consent in situations involving a reasonable expectation of privacy.

129. Plaintiff had a reasonable expectation of privacy in her home while engaging in intimate sexual activity in private settings, including her residence and other non-public locations.

130. Without Plaintiff's knowledge or consent, Defendant's agent, Mitchum, intentionally recorded Plaintiff engaged in sexual activity.

131. Plaintiff did not consent to being recorded and was unaware that the recording was taking place until she observed a camera flash during the encounter.

132. The nonconsensual recording constituted an intentional intrusion into Plaintiff's private affairs and seclusion.

133. This intrusion would have been highly offensive or objectionable to a reasonable person as it involved the nonconsensual recording of Plaintiff engaging in sexual activity that was itself coerced and nonconsensual.

134. The offensive or objectionable intrusion into Plaintiff's seclusion caused Plaintiff significant emotional distress, humiliation, and fear.

135. At all relevant times, Mitchum was acting within the scope of his authority as Plaintiff's supervisor and as Defendant's agent, thereby rendering Defendant vicariously liable for his conduct.

136. As a direct and proximate result of Defendant's intrusion upon Plaintiff's seclusion, Plaintiff has and continues to suffer severe emotional distress, mental anguish, humiliation, embarrassment, and loss of personal dignity and privacy, and is entitled to recover compensatory damages, punitive damages, and all other relief deemed just and proper.

## COUNT VI
### Intentional Infliction of Emotional Distress

137. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

15

138. Defendant's agent, Mitchum, engaged in extreme and outrageous conduct, including coercing Plaintiff into sexual activity, abusing his supervisory authority and control over Plaintiff's employment, recording Plaintiff engaged in sexual activity without her knowledge or consent, and intimidating Plaintiff when she attempted to end the relationship.

139. Mitchum knew or was consciously aware that his conduct was substantially certain to cause Plaintiff severe emotional distress or acted in reckless disregard of the probability that such distress would result.

140. Plaintiff, in fact, suffered severe emotional distress, including fear, humiliation, anxiety, and psychological trauma.

141. Mitchum's conduct was intentional, willful, and outrageous, and exceeded all bounds of decency tolerated in a civilized society.

142. At all relevant times, Mitchum acted with actual and apparent authority as Plaintiff's supervisor, and his conduct was facilitated by and arose from his position of power over Plaintiff's employment, rendering Defendant vicariously liable for his actions.

143. As a direct and proximate result of Defendant's intentional infliction of emotional distress upon Plaintiff, Plaintiff has and continues to suffer severe emotional distress, mental anguish, humiliation, embarrassment, and loss of personal dignity and privacy, and is entitled to recover compensatory damages, punitive damages, and all other relief deemed just and proper.

### COUNT VII
**Negligent Infliction of Emotional Distress**

144. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

145. Defendant owed Plaintiff a duty to exercise reasonable care to protect her from foreseeable harm, including harm arising from the abuse of supervisory authority, coerced sexual

16

conduct, and unlawful invasions of privacy occurring within the workplace and other settings under Defendant's control.

146.    Defendant breached this duty by failing to properly supervise, monitor, or restrain Mitchum; by failing to implement or enforce safeguards to prevent abuse of authority; and by failing to take reasonable steps to prevent or remedy Mitchum's conduct despite the foreseeable risk of harm to Plaintiff.

147.    As a direct and proximate result of Defendant's negligence, Plaintiff was placed in fear for her physical safety and subjected to circumstances creating a reasonable apprehension of imminent physical harm and suffered severe emotional distress that was both foreseeable and directly caused by Defendant's failure to act.

148.    Plaintiff's emotional distress was accompanied by physical manifestations associated with severe emotional trauma.

149.    As a direct and proximate result of Defendant's negligence, Plaintiff has and continues to suffer severe emotional distress, mental anguish, humiliation, embarrassment, and loss of personal dignity and privacy, and is entitled to recover compensatory damages, punitive damages, and all other relief deemed just and proper.

**<u>RELIEF REQUESTED</u>**

WHEREFORE, Plaintiff respectfully requests that this Court find in Plaintiff's favor and against Defendant as follows:

      a.      Back pay;

      b.      Payment of interest on all back pay recoverable;

      c.      Front pay;

      d.      Loss of benefits;

    e.        Compensatory and punitive damages;

    f.        Reasonable attorneys' fees and costs;

    g.        Award pre-judgment interest if applicable; and

    h.        Award Plaintiff any and all other such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests that all issues be submitted to and determined by a jury.

Dated this 4th day of February, 2026.

*/s/ Yasmeen Elagha, Esq.*
Yasmeen Elagha, Esq.
Mohammed O. Badwan, Esq.
Atlas Law Center, Ltd.
2500 South Highland Avenue
Suite 200
Lombard, IL 60148
Phone (630) 575 - 8181
Fax (630) 575 - 8188
yelagha@atlaslawcenter.com
mbadwan@atlaslawcenter.com
*Attorneys for Plaintiff*